Nile T. **DELAND, Plaintiff-Appellant,**

v.

**OLD REPUBLIC LIFE INSURANCE COMPANY, Defendant-Appellee.**

C.A. No. 83–4010.

United States Court of Appeals, Ninth Circuit.

Argued May 11, 1984.

Submitted May 21, 1984.

Decided April 24, 1985.

Noel H. Kopperud, Wasilla, Alaska, for plaintiff-appellant.

Matthew Peterson, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, Alaska, for defendant-appellee.

Before FLETCHER and FARRIS, Circuit Judges, and JAMESON,[*] District Judge.

JAMESON, Senior District Judge:

Nile T. DeLand appeals from a judgment, following a jury verdict, denying him coverage under a disability insurance policy issued by Old Republic Life Insurance Co. DeLand contends, *inter alia,* that the district court erred by instructing the jury in effect to interpret the contract. We agree that the district court erred but find that DeLand invited the error and therefore affirm.

---

[*] The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. The policy defines "total disability" and "periods of disability" as follows:

"Total disability" as used herein means disability caused by injury or sickness resulting in the complete inability of the insured person to perform each and every duty of his regular occupation, provided that no benefits shall be payable hereunder during any period in which the insured person is engaged in any gainful occupation for which he is qualified by reason of his experience, education or training. *Two or more periods of disability*

## I. *Factual Background*

On November 24, 1975, Nile T. DeLand, an employee of Johnson Fuel Service, injured his back while on the job. He was covered by a group disability policy procured by his employer from Old Republic Life Insurance Co. The parties agree that he was totally disabled as a result of his injury, that the policy covered his disability, and that he consequently received long-term disability payments under the policy until he returned to work on May 3, 1976. DeLand's attempt to work, however, proved unsuccessful. He alleges that "he was unable to perform the heavy lifting and pulling involved in his regular duties.... He encountered increasing pain and co-workers undertook many of his regular tasks." Nevertheless, DeLand received his regular full-time wages from May 3 until June 14, 1976 (approximately five weeks) when he stopped working. On July 9, he contacted Old Republic seeking resumption of his disability benefits.

In the meantime, the Old Republic policy had terminated on April 30, 1976, and a new policy issued by Equitable Life Assurance Co. had taken its place. According to the terms of the termination, Old Republic was not responsible for any new claims arising after April 30, 1976. The policy contained a clause, the center of this dispute, defining new periods of disability.[1] When DeLand requested resumption of benefits on July 9, Old Republic treated the request as a new claim, but did not reject it immediately. Instead, it requested DeLand

*due to the same or related injury or sickness shall be considered one period of disability unless separated by the insured person's return to the full-time duties of his regular occupation or his engagement in any occupation for wages or profits, for a continuous period of at least three weeks.*

(emphasis added). Old Republic contended that DeLand's return to his job for more than three weeks terminated his disability benefits and created a new period of disability (regardless of whether it resulted from the same injury), requiring him to file a new claim under the policy.

to have his physician complete a claim form. For a time DeLand chose to pursue his claim with Equitable. When he again sought coverage under the Old Republic policy, the company notified him on March 14, 1978 that it would deny his claim because the policy had terminated prior to his submission of the new claim.

## II. *Proceedings in District Court*

On November 2, 1978 DeLand filed a complaint in Alaska state court against Old Republic, Equitable, and the administrator of the disability plans, Healy Petroleum Insurance Agency, Inc. The case was removed to federal court and the complaint was amended to allege, *inter alia,* that Old Republic had wrongfully denied coverage under the policy and had engaged in bad faith conduct "calculated to reduce or defeat plaintiff's rightful claims." DeLand's claims against Equitable and Healy were subsequently dismissed without prejudice.

Both parties moved for summary judgment on the coverage issue. The district court initially granted Old Republic's motion but later vacated its order to permit DeLand additional time to oppose the motion. DeLand argued below, as he does here, that the disputed clause defining separate periods of disability "creates a presumption of *one,* not two, periods of disability" and is "designed to prevent an insured person from collecting the maximum benefit twice by returning to work briefly, though disabled, leaving work, and then claiming that a second period of disability has commenced...." Old Republic argued that the policy language unambiguously provides "that the insured may not claim benefits for an earlier disability period where he has returned to his regular job or taken any other occupation for wages or profit for a period of more than three weeks." Both parties attempted to rely on controlling Alaska law governing the interpretation of insurance policies, and each moved the court to construe the language of the policy as a matter of law. On October 23, 1981, however, the district court denied both motions because it found "that questions of fact exist regarding both mo-

tions for summary judgment." Specifically, the court held:

Alaska law, which must be applied in this diversity of citizenship case, establishes that insurance contracts are to be construed to provide coverage a layman would reasonably expect. Further, "[i]t is not required that ambiguities be found in the policy language as a condition precedent for such construction." Mr. DeLand's reasonable expectations regarding insurance coverage in light of his attempt to resume employment, involve questions of fact.

(citations omitted).

Old Republic moved for reconsideration of the court's order on November 12 and DeLand filed a written opposition to the motion. The court denied Old Republic's motion and its subsequent motions for summary judgment and reconsideration, each of which DeLand opposed.

The case was tried between February 7 and 15, 1983. The court instructed the jury on "[c]ertain principles and rules of law govern[ing] the general interpretation of the terms of an insurance policy." In particular, the court gave instruction No. 17 which reads:

If you find that Mr. DeLand's reasonable expectation at the time he attempted to return to work was that his disability insurance benefits would be available and continue then you must find that Mr. DeLand is entitled to exactly those benefits, and all of those benefits, that he reasonably expected were provided by his Old Republic disability insurance policy.

DeLand did not object to this pattern of jury instruction which in effect directs the jury to interpret the policy. The jury returned a verdict for Old Republic. Alleging error in submitting the interpretation of the policy to the jury, DeLand moved alternatively for judgment notwithstanding the verdict or a new trial. The court denied the motion in part because it was "unable to conclude that there is only one reasonable conclusion regarding the verdict" and because "plaintiff did not object

to jury instruction #17, which allowed the jury to determine the factual question surrounding plaintiff's reasonable expectation regarding insurance coverage."

### III. *Contentions on Appeal*

DeLand contends that the district court erred in (1) permitting the jury to interpret the contract; (2) permitting Old Republic to present evidence suggesting Equitable's liability for DeLand's claim; (3) submitting evidence of Mrs. DeLand's business activities; (4) finding that the verdict denying coverage under the policy was supported by the weight of the competent evidence; and (5) dismissing DeLand's claim for punitive damages.

### IV. *Standard of Review*

■■■ Alaska law governs this diversity case. We review the district court's interpretation of state law *de novo. Matter of McLinn,* 739 F.2d 1395, 1403 (9th Cir.1984) (en banc). In diversity cases, whether an issue is one of law for the court to decide or one of fact for the jury to determine is governed by federal law. *Gillespie v. Travelers Insurance Co.,* 486 F.2d 281, 283 n. 1 (9th Cir.1973).

### V. *Interpretation of the Policy by the Jury*

Under Alaska law, "[t]he construction of an insurance contract is a matter for the court, unless its interpretation is dependent upon the resolution of controverted facts." *O'Neill Investigations, Inc. v. Illinois Emp. Ins. of Wausau,* 636 P.2d 1170, 1173 (Alaska 1981). In Alaska, interpretation of the coverage provided by an insurance policy is governed principally by the following rule:

> An insurance policy may be considered a contract of adhesion, and as such, should be construed to provide the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language. It is not required that ambiguities be found in the policy language as a condition precedent for such construction.

*Puritan Life Insurance Co. v. Guess,* 598 P.2d 900, 904 (Alaska 1979) (quoting *Stordahl v. Government Employees Insurance Co.,* 564 P.2d 63, 65–66 (Alaska 1977)).

■■■ The Alaska case law establishes that the standard of what "a layperson would reasonably have expected" is an objective standard based on the expectations of a hypothetical layperson. *See Starry v. Horace Mann Insurance Co.,* 649 P.2d 937, 939 (Alaska 1982); *INA Life Insurance Co. v. Brundin,* 533 P.2d 236, 241–43 (Alaska 1975). In some cases the Alaska Supreme Court has phrased the standard as a test of whether the insured's expectations of coverage were reasonable under the circumstances. *See, e.g., O'Neill Investigations v. Illinois Employers Insurance of Wausau,* 636 P.2d 1170, 1177 (Alaska 1981) ("The insured must demonstrate ... that its expectation of coverage was based on specific facts which make these expectations reasonable.") The standard, however, remains objective regardless of whether it asks (1) if a reasonable lay person would expect coverage under the policy or (2) if the insured's expectations of coverage under the circumstances are those of a reasonable lay person. Because this "rule of interpretation" is applicable to the policy language even when the language is clear and unambiguous, it has been routinely applied by the trial courts in summary judgment proceedings. *See, e.g., Starry v. Horace Mann Insurance Co.,* 649 P.2d at 939–40 (summary judgment); *O'Neill Investigations v. Illinois Employers Insurance of Wausau,* 636 P.2d at 1175–77 (summary judgment); *U.S. Fire Insurance Co. v. Colver,* 600 P.2d 1, 3 (Alaska 1979) (declaratory judgment); *Puritan Life Insurance Co. v. Guess,* 598 P.2d at 904 (summary judgment).

We do not hold that the trial court must apply the standard in every case, particularly where material questions of fact must be resolved. The Alaska Supreme Court has stressed that:

> A lay person's expectations of insurance coverage are of course formed by many

factors besides the language of the policies themselves.... For this reason and in order to give effect to our rule of interpretation that a policy holder's reasonable expectations of coverage are to control, all representations of the insurer to the prospective purchaser must be taken into account. An insurer will in fact be bound by its representations to the extent that they form, with the policy itself, the expectations of a reasonable policyholder.

*INA Life Insurance Co. v. Brundin,* 533 P.2d at 242. The rare case may arise where the court cannot determine the policy's coverage by applying the reasonable expectations test to the language of the policy and the undisputed representations of the insurer. Such a case could raise the question of whether a jury, called upon to resolve material factual questions about the insurer's representations, may then apply the expectations test under proper instructions from the court. We do not, however, face this issue under the present facts.

 The pretrial memoranda filed by both parties establish that the language of the policy and the representations of the insurer were virtually undisputed. Interpretation of the policy, therefore, involved no questions of fact for the jurors and should not have been submitted to them. The district court, however, declined to interpret the policy on cross motions for summary judgment because it determined that "Mr. DeLand's reasonable expectations regarding insurance coverage in light of his attempt to resume employment, involve questions of fact." Consistent with this erroneous view of the controlling law, the court gave instruction number 17, directing the jury to determine "Mr. DeLand's reasonable expectation at the time he attempted to return to work." But as Old Republic pointed out when it moved the court to reconsider the denial of summary judgment, "This is not the legal standard to be applied. It is not Mr. DeLand's subjective

understanding which governs this decision. Rather, this determination is controlled by an objective standard." The rule of interpretation announced by the Alaska Supreme Court requires the policy to provide the coverage a reasonable lay person would expect. *O'Neill Investigations,* 636 P.2d at 1175. Factual questions concerning the plaintiff's actual expectations of coverage at the time he returned to work are simply irrelevant to the threshold issue of whether the policy language would give a reasonable lay person a right to expect coverage. The district court, therefore, erred in formulating the controlling legal standard and in permitting the jury to apply it to the facts of this case.

## VI. *Did DeLand Invite the Error?*

In a different context, this court, in *Hudson v. Wylie,* 242 F.2d 435, 448 (9th Cir.) *cert. denied,* 355 U.S. 828, 78 S.Ct. 39, 2 L.Ed.2d 41 (1957), considered at some length the rule that "one may not complain on review of errors below for which he is responsible."[2] The court quoted from *Noble v. Miles,* 129 Cal.App. 724, 19 P.2d 265, 266: " '... One who by his conduct induces the commission of some error by the trial court, or, in other words, who has invited error, is estopped from insisting that the action of the court is erroneous,' 2 Cal.Jur. p. 846." We continued:

It was said in *Brown v. Union Oil Company of Wichita,* 114 Kan. 482, 218 P. 998, that a litigant cannot take a contrary position, one in which he has sought and procured an order, ruling, or judgment in the trial court, and another in the reviewing court in which he complains of such order, ruling or judgment. One may not on review complain of issues, proof, and variance where such errors were committed or invited by complainant, nor where the objection is inconsistent with the position taken below.

*Id.* at 448–49.

 It is clear from the respective motions for summary judgment that initially

---

**2.** In *Hudson* the court was concerned with the application of the rule to the exclusion of evi-

dence.

each party took the position that the interpretation of the contract was a question of law for the court. Old Republic maintained that position consistently until the jury returned a verdict in its favor. On the other hand, while continuing to maintain that he was entitled to summary judgment on the issue of contract liability, it is clear from the record that if his own motion were not granted, DeLand had no objection to submission of this issue to a jury. Whether this constituted mere acquiescence or an invitation to the court to err presents a close question, but we conclude that DeLand went beyond mere acquiescence even prior to the court's ruling that the case would be submitted to the jury.

DeLand first qualified his position in his "Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment" by arguing that "unless this court can find that DeLand reasonably expected to lose his vested disability benefits when he made a trial return to work, then the *Puritan* [*Life Insurance Co. v. Guess*, 598 P.2d 900] rule requires that coverage be allowed and the plaintiff's motion be granted." The court adopted this erroneous view of the applicable legal standard when it denied the cross-motions for summary judgment.[3] As a corollary to this argument, the court concluded that the issue of coverage under the policy turned on a factual determination to be made by the jury.

Thereafter, without again expressly relying on his erroneous argument, DeLand resisted efforts by Old Republic to correct the court's legal error. In opposing Old Republic's first motion for reconsideration, DeLand argued that "where the defendant simply disagrees with the court's ruling and cites no law which it could not have cited before, the motion for reconsideration seems merely dilatory...." In his pretrial memorandum DeLand also avoided pointing out the court's error by simply noting without comment the general rule "that

interpretation of words of a contract is ordinarily a matter for the court, while the resolution of dispute as to surrounding circumstances is for the trier of fact." DeLand did not at any time expressly argue the propriety of the court's ruling submitting the issue of contract interpretation to the jury.

DeLand, however, did not abandon his erroneous argument that his subjective expectations of coverage would govern the interpretation of the contract. He invited error a second time when he offered his proposed jury instruction number 53, which the court gave verbatim as its instruction number 17. Having initially engendered the court's erroneous construction of the reasonable expectations test and then having offered this instruction, appellant will not be heard to complain on appeal that "ascertainment of the probable and reasonable lay understandings or expectations that should be anticipated to develop from the language used in the insurance contract is strictly an analysis performed by the court.... [It] is an objective test." The instruction that DeLand offered permitted the jury to determine the very question that DeLand now argues on appeal should not have been submitted to the jury.

■ Rule 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict...." Fed.R.Civ.P. 51. DeLand may not now raise the error in the instruction for the first time on appeal. *Philippine Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 807 (9th Cir.1984).

## VII. *Evidence of Correspondence with Equitable*

DeLand contends that the district court erred in admitting into evidence correspondence between Old Republic, Equitable, and Healy Insurance Co. The correspon-

---

3. In the order denying both motions for summary judgment, the district court held that Alaska law "establishes that insurance contracts are to be construed to provide coverage a layman would reasonably expect" (citing *Puritan Life v.*

*Guess*), and that "Mr. DeLand's reasonable expectation regarding insurance coverage in light of his attempt to resume employment, involve questions of fact."

dence contained, *inter alia*, discussions of Equitable's potential liability for DeLand's claim. The court admitted the evidence over DeLand's objections as part of Old Republic's business records under Fed.R. Evid. 803(6). DeLand argues that the evidence was prejudicial and confusing to the jury as to Old Republic's liability.

We find no error in admitting the correspondence into evidence. First, the correspondence was clearly relevant under Fed.R.Evid. 402 with respect to DeLand's reasonable expectation of coverage and his claim that Old Republic had denied coverage in bad faith. The court admitted only limited portions of the evidence and did not admit other portions offered by Old Republic. The correspondence admitted was received by Old Republic in the ordinary course of business and became part of the DeLand file. It was admissible under the hearsay exception of Fed.R.Evid. 803(6). Second, "[i]n deciding whether to admit or exclude evidence, ... the trial court has broad discretion." *Burgess v. Premier Corp.*, 727 F.2d 826, 833 (9th Cir.1984). Since both the contract claim and the bad faith claim were tried together and appellant did not move to bifurcate the proceedings under Fed.R.Civ.P. 42(b), the district court did not abuse its discretion in admitting the disputed evidence.

### VIII. *Evidence of Mrs. DeLand's Business*

The court also admitted considerable evidence, consisting mostly of business records, of Mrs. DeLand's business activities in a company she had inherited from her brother. Some of the evidence suggested that Mr. DeLand had been involved in the business while seeking disability benefits. DeLand contends that the district court erred by admitting the evidence because "DeLand believes that the jury was confused by the evidence and could easily have misconstrued its importance."

The record does not support this contention. As Old Republic argues, the evidence was relevant to show that Mr. DeLand had been employed in a business for profit—an important factor in determining whether he was disabled under the terms of the Old Republic policy. We find nothing inherently confusing or prejudicial about the evidence that would require its esclusion under Fed.R.Evid. 403. The district court, therefore, did not abuse its discretion by admitting the evidence.

### IX. *Is Verdict Supported by Weight of Competent Evidence?*

The district court denied DeLand's motion for judgment notwithstanding the verdict because it was "unable to conclude that there is only one reasonable conclusion regarding the verdict." DeLand now reasserts his contention that the verdict is not supported by the weight of competent evidence.

"A judgment notwithstanding the verdict is appropriate when 'the evidence permits only one reasonable conclusion as to the verdict.' Neither the district court nor this court may weigh the evidence or order a result it finds more reasonable if substantial evidence supports the jury verdict." *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir.1984) (quoting *Flores v. Pierce*, 617 F.2d 1386, 1389 (9th Cir.) (quoting *Kay v. Cessna Aircraft Co.*, 548 F.2d 1370, 1372 (9th Cir. 1977), *cert. denied, sub nom., Antry v. Flores*, 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980))). We find substantial evidence in the record to support the jury's verdict. We cannot say that the policy language compels a single conclusion or that a reasonable lay person would necessarily expect continuing disability coverage under the policy after returning to work for more than three weeks.

### X. *Conclusion*

While we hold that the court erred in construing Alaska's reasonable expectation test and in permitting the jury to interpret the policy, we find that appellant invited these errors and, therefore, cannot rely on them on appeal. We also hold that the district court did not abuse its discretion in

admitting both the evidence suggesting Equitable's possible liability and the evidence relating to Mrs. DeLand's business. Finally, we find the jury verdict supported by substantial evidence, and it is, therefore, affirmed.[4]

AFFIRMED.

---

4. Since we are affirming the jury verdict for the defendant-appellee, it is unnecessary to consider appellant's contention that the district court erred in dismissing his claim for punitive damages. There can be no punitive damages where compensatory damages have not been awarded.